UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

VILMA MENDOZA MENDEZ                    CIVIL ACTION NO. 3:25-1697

                                        SECTION P

VS.

                                        JUDGE TERRY A. DOUGHTY

KRISTI NOEM, ET AL.                     MAG. JUDGE KAYLA D. MCCLUSKY

REPORT AND RECOMMENDATION

Petitioner Vilma Mendoza Mendez,[1] a detainee at Richwood Correctional Center in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2]  For reasons below, the Court should deny her petition.

Background

Petitioner is a citizen of Guatemala.  [doc. # 1, p. 7].  "On December 23, 2003, [she] crossed the US/Mexico border, entering without inspection.  On August 22, 2025, she was detained for lacking documentation at an ICE checkpoint leaving church and sent to the Richwood Correctional Center."  Id.  The Government classifies Petitioner as "an alien present in the United States who has not been admitted or paroled."  [doc. # 1-2, p. 1].

---

[1] Petitioner's "A-Number" is 221-466-502.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

1

An "Immigration Judge (IJ) has held that the Petitioner is ineligible for bond pursuant to *Matter of Yajure Hurtado*[,]" which "held that all noncitizens who enter without inspection are subject to mandatory detention under INA § 235(b)(2)." [doc. # 1, p. 7].

Petitioner filed the instant proceeding on November 5, 2025, primarily seeking a bond hearing. [doc. # 1, p. 32]. She claims that she should be detained under 8 U.S.C. § 1226(a), rather than under 8 U.S.C. § 1225, and is therefore entitled to a bond hearing. *Id.* at 15, 29. She also claims that because the Government denied her a bond hearing, her detention violates the Fifth Amendment's Due Process Clause. *Id.* at 29-30.

On November 19, 2025, an immigration judge ordered Petitioner removed from the United States. [doc. #s 5-4, p. 6]. Petitioner appealed the order to the Board of Immigration Appeals ("BIA"); her appeal is pending.

The Government opposes the petition, arguing that Petitioner is properly detained under 8 U.S.C. § 1225(b)(2), and is not entitled to a bond hearing. [doc. # 5, p. 14]. The Government also maintains that Petitioner's detention does not violate due process. *Id.* at 25.

Petitioner filed a reply on December 9, 2025. [doc. # 6].

## Law and Analysis

### I. 8 U.S.C. § 1225 Vs. 8 U.S.C. § 1226

On February 6, 2026, the Fifth Circuit Court of Appeals held that aliens who have not been admitted may be detained without bond hearings under 8 U.S.C. § 1225(b)(2)(A) even when they have been present in the United States for many years. *Buenrostro-Mendez*, 166 F. 4th at 502. In reaching its conclusion, the court analyzed the meaning of "seeking admission" and "applicants for admission" in 8 U.S.C. § 1225. *Id.* The court concluded that "applicants for admission," which includes all aliens who have not previously been admitted to the United

States, are necessarily "seeking admission" and, therefore, subject to mandatory detention under § 1225(b)(2)(A). *Id.*

Here, *Buenrostro-Mendez* governs Petitioner's detention status: she is detained under Section 1225. Under 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien *shall be detained* for further consideration of the application for asylum." Plainly, Section 1225 does not authorize release on bond. *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Petitioner is, therefore, not statutorily entitled to a bond hearing. The Court should dismiss her statutory claim accordingly.

## II. Due Process

Petitioner claims that the Due Process Clause entitles her to a bond hearing. In *Dzheison Ford v. Timothy Ducote, et al.*, 3:20-cv-1170, Doc. 19, (W.D. La. Nov. 2, 2020), the district judge opined in pertinent part:

> In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border of the United States. He was detained for expedited removal. An asylum officer rejected his credible fear claim. Thuraissigiam then filed a federal habeas corpus petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum. In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause. Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens. Citing *Nishimare Ekin v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States, "'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" 140 S. Ct. at 1977.

> In *Demore v. Kim*, 538 U.S. 510 (2003), Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. Like Ford, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society or a flight risk. Also, like Ford, Kim asked for an

individualized bond hearing which was not authorized under the statute. Both the District Court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights. In reversing the District Court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights.

Also, like Ford, Kim relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, two aliens were held pending removal after final order of deportation. However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. §1231(a). The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id*. at 699. The Supreme Court concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported. *Id*. at 702.

The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." Therefore, the correct standard to apply is to determine whether Ford's detention is "indefinite" or "potentially permanent."

Ford's detention is not "indefinite" or "potentially permanent." Ford's detention ends when the removal proceedings end. Ford's focus on "unreasonable detention" is incorrect. As long as Ford's detention is not "indefinite" nor "potentially permanent," Ford's due process rights are not violated. See also *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).

Here, Petitioner is not constitutionally entitled to a bond hearing. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process.").[3] As in *Ford*, Petitioner's detention is not indefinite or potentially permanent. An immigration judge ordered her removed on November 19, 2025, and Petitioner thereafter chose to appeal, which will likely extend her detention until the BIA decides her appeal. Petitioner's detention will likely end (i) when her order of removal becomes final (if the BIA affirms the order of removal or dismisses Petitioner's appeal) and the Government removes her or (ii) if the BIA rules in Petitioner's favor. Accordingly, the Court should deny Petitioner's claim.

---

[3] *See also Romero v. Tate*, 2026 WL 1067566, at *1 (S.D. Tex. Apr. 20, 2026); *Bekboev v. Vergara,* 2026 WL 1011244, at *1 (S.D. Miss. Apr. 14, 2026); *Mlaih v. Noem*, 2026 WL 787536, at *4 (N.D. Tex. Mar. 19, 2026).

## III. Class Action

Citing "*Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d----, 2025 WL 3288403 at 9," Petitioner claims that she is "a member of the class contemplated in that case and by virtue of the declaratory judgment, should be entitled to a bond hearing under 8 USC 1226." [doc. # 6, p. 4].

In *Bautista*, the court found that persons like Petitioner meeting certain identified requirements are "Bond Eligible." However, one district judge in this district previously rejected this conclusion. *See Mendoza v. Rice,* Civil Action No. 1:26-0058 (W.D. La. Jan. 14, 2026) [doc. #6, pp. 10-19] (Doughty, J.). Another district judge likewise opined:

> [T]he reasoning undergirding [*Bautista*] was expressly rejected by a panel of the Fifth Circuit. *Compare Buenrostro-Mendez*, 166 F.4th at 502–08 *with Guerrero-Orellana*, No. 1:25-cv-12664-PBS, at ECF No. 112 *and Maldonado Bautista*, No. 5:25-cv-1873-SSS, at ECF No. 116. Because Petitioner is an inadmissible alien who is an "applicant for admission," § 1225(b) applies to her; therefore, she "shall be detained for a proceeding under [§] 1229a." 8 U.S.C. § 1225(b)(2)(A).

*Ramirez v. Harper, et al.*, No. CV 26-386 SEC P, 2026 WL 1067923, at *1 (W.D. La. Apr. 20, 2026). The undersigned agrees with the judges' opinions above. Accordingly, the Court should dismiss this claim.

## IV. Procedural Due Process

Petitioner suggestively claims that absent a bond hearing, Respondents are violating her right to procedural due process.

"No person shall . . . be deprived of . . . liberty . . . without due process of law[.]" U.S. CONST. AMEND. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government

5

custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. at 690.

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted)). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . . ").

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens

6

that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).[4]

Here, the first factor above weighs in Petitioner's favor as freedom from bodily restraint is the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 259 (2004); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). To reiterate, "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Living in the United States for over twenty-one years (albeit, not on parole, bond, or other supervision), Petitioner established a liberty interest. *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (noting that "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these [aliens] from deprivation of life, liberty, or property without due process of law" whether they are here unlawfully or not). She is the mother of U.S. citizens. [doc. # 6, p. 9]. She has essentially established her life in this country. Terminating her valued liberty likely inflicted a grievous loss. *See generally Lopez Miranda v. Flores*, 2025 WL 3901908, at *3 (W.D. Tex. Dec. 10, 2025) (holding that "noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status.").[5] That said, Petitioner always knew that she was in the United States without permission, which qualifies her liberty to a degree.[6]

---

[4] Neither party addresses the *Mathews* factors.

[5] Of note, some courts have even held that a convicted prisoner mistakenly released from federal prison is entitled to procedural due process in the form of a hearing before reincarceration. *See, e.g.*, *Hurd v. Dist. of Columbia, Gov't*, 864 F.3d 671, 682 (D.C. Cir. 2017).

[6] *See generally Henderson v. Simms*, 223 F.3d 267, 274 (4th Cir. 2000) ("A prisoner who is mistakenly released does not have a protected liberty interest because, unlike a parolee, he does not have a 'legitimate claim of entitlement' to freedom.").

Next, the second factor above—the risk of an erroneous deprivation of such interest through the procedures used—leans in Respondents' favor.  Petitioner does not offer any reason why not providing process to her before she was detained—i.e., before the Government terminated her liberty interest—risked error.  The Government has provided process after detaining her in the form of a Notice to Appear, the ability to respond to the Government's motions, the opportunity to be heard in a hearing or via motion(s), the opportunity to present evidence, and an appeal.  She has received opportunities to be heard on relevant issues such as her identity, whether she was not "admitted or paroled after" she entered the United States,[7] the country of which she is a citizen, the country or countries which might accept her, when she entered the country, and whether she is entitled to asylum or other protection.

Petitioner appears to only seek post-deprivation process in the form of a bond hearing. From what the undersigned can glean, she appears to argue that the potential error in failing to provide a bond hearing is detaining an individual who is not a flight risk or a danger to society. However, as explained above Respondents are statutorily required to detain her under 8 U.S.C. § 1225.  Thus, even if a neutral decisionmaker determined that she was not a flight risk or a danger, Respondents would still detain her.

In *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003), the statute at issue required all sex offenders to register so that their information could be published.  The respondent, a convicted sex offender, argued that the law violated his procedural due process rights by requiring him to register without a hearing as to whether he was "currently dangerous." *Id.* at 6.  Rejecting the argument, the Court opined, "Plaintiffs who assert a right to a hearing

---

[7] [doc. # 1-2, p. 1].

8

under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant *under the statutory scheme.*"  *Id.* at 8 (emphasis added).  Whether the respondent was not dangerous was "of no consequence" under the statute because it required registration of *all* convicted sex offenders.  *Id.* at 7.

Here, whether Petitioner is a risk of flight or danger is largely irrelevant to whether the Government must—under relevant statutory and regulatory schemes—detain her and remove her.[8]  Relevant issues, for example, include her identity, citizenship, whether she was ever admitted or paroled, when she entered this country, and whether she is entitled to protection from removal.  And as explained above the Government has already provided process for these issues. *See Clavijo v. Thompson, et al.*, 2026 WL 923310, at *3 (S.D. Tex. Mar. 26, 2026) ("8 USC § 1225(b)(2)(A), *mandates* detention of those falling within the definition of 'applicants for admission' without regard to any individualized custody determination concerning dangerousness or flight risk.  And the Fifth Circuit in *Buenrostro-Mendez* has now determined that such detention lawfully applies to 'applicants for admission' like Petitioner.  A hearing as to dangerousness or flight risk is thus irrelevant to the *lawfulness* of his detention under the statute.").  All of this is to say that there is little, if any, risk of error in terminating her liberty without providing her a post-deprivation bond hearing.

---

[8] To be sure, noncitizens detained under 8 U.S.C. § 1225(b) *may* be released on parole for "urgent humanitarian reasons or significant public benefit," if they "present neither a security risk nor a risk of absconding."  *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b).  Thus, a determination that Petitioner is neither a flight risk nor a danger is not completely irrelevant. Here, however, Petitioner does not contend that she is entitled to release for urgent humanitarian reasons or for significant public benefit.  And even if she did, she had and has the opportunity to present such a contention in her removal proceedings.  *If* the Secretary of Homeland Security agreed, *then* Petitioner could attempt to demonstrate that she is neither a security risk nor a risk of absconding.

The third factor—the Government's interest, including any fiscal and administrative burdens that the additional or substitute procedural requirement would entail, if any—weighs in the Government's favor. The Government has a significant interest in protecting the community and preventing flight. Petitioner eluded immigration authorities for over twenty-one years, demonstrating that she is a possible flight risk. Thus, affording her a bond hearing could burden the Government's interest in preventing flight. And even assuming Petitioner sought pre-deprivation process, providing it to her and others who entered the United States without permission—i.e., providing notice of the intent to detain them *before* detaining them—would create an appreciable risk of evasion before arrest/detention.

Accordingly, the Government has not violated Petitioner's right to procedural due process. The Court should dismiss this claim.

**Recommendation**

For reasons above, **IT IS RECOMMENDED** that Petitioner Vilma Mendoza Mendez's petition be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the**

**legal conclusions accepted by the District Court, except upon grounds of plain error.  *See***

***Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 23rd day of April, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge